JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 16-2645-GW(SPx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | *Robert Elguezabal v. Luria Moors Foreman, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Raymond G. Ballister, Jr. | None Present |

**PROCEEDINGS:**    **PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY'S FEES [83]**

Counsel for Defendants is not present.

Court hears oral argument. The Tentative circulated and attached hereot, is adopted as the Court's Final Ruling. The Court would GRANT IN PART the Motion. The Court would AWARD $20,894.30 in fees and $1,968.18 in costs to Plaintiff. Plaintiff should prepare a proposed order to this effect within 7 days of this order, and if any party has a *mathematical* issue with the hours as tallied they should similarly inform the Court in writing within 3 days of this order.

|   | : | 10 |
|---|---|---|
| Initials of Preparer | JG | |

*Elguezabal v. Foreman*, Case No. 5:16-cv-02645-GW-(SPx)
Tentative Ruling on Plaintiff's Motion for an Award of Attorney's Fees and Costs

**I. Background**

On December 28, 2016, Robert Elguezabal ("Plaintiff") sued Luria Moors Foreman ("Foreman"), in individual and representative capacity as trustee of the Luria Moors Foreman Living Trust (the "Trust"), Joseph R. Moors ("Moors"), and Joey's Bar-B-Q, Inc. ("Restaurant") (collectively, "Defendants"), for violations of the Americans with Disabilities Act ("ADA") and the Unruh Civil Rights Act. *See generally* Complaint, Docket No. 1. Plaintiff alleged that he is paraplegic who uses a wheelchair for mobility. *See id.* ¶ 1. He alleged that the Restaurant premises had the following ADA deficiencies: (1) "the ramp from the parking area to the entrance is longer than 6 feet but it does not have handrails that go the entire length of the ramp;" (2) "the landing at the end of the ramp is not level;" (3) "The path of travel only measures approximately 40 inches by 38 inches and does not provide the required 54 or 60 inches width;" (4) "[t]he restroom mirror is mounted on the wall so that its bottom edge is approximately 53 inches above the floor;" (5) the restroom toilet has only one grab bar rather than two; and (6) "[t]here is no clear floor space in front of the paper towel dispenser because it is mounted on the wall behind the sink." *See id.* ¶¶ 12-17.

The Defendants initially attempted to defend themselves in pro per status and a problem arose as to the Trust purportedly representing itself. *See* Docket Nos. 9, 12. On February 27, 2017, the Court (1) ordered the Trust and corporate defendants to locate counsel, (2) took Plaintiff's motion to dismiss off-calendar, and (3) ordered the parties to meet and confer to attempt to settle the matter. *See* Docket No. 19. On July 3, 2017, it was reported that the parties were unable to reach a settlement before the voluntary mediator supplied by the Court. *See* Docket No. 35.

In July 2017, pursuant to the stipulation of the parties, the Plaintiff filed a First Amended Complaint ("FAC") which did not alter the alleged ADA deficiencies at the site. *See* Docket Nos. 37, 41-42. Plaintiff sought remediation of the remaining barriers, statutory damages in the sum of $4,000, and reasonable attorneys' fees and costs. *See* FAC at page 8.

On October 6, 2017, Plaintiff filed a motion for summary judgment. *See* Plaintiff's Memorandum of Points and Authorities in Support of his Motion for Summary Judgment

1

("MSJ"), Docket No. 50-1. The Court issued a tentative in Plaintiff's favor, granting in part and denying in part Plaintiff's MSJ; and continuing the action following discussions with the parties as to possible resolution of the case.[1] *See* Nov. 20, 2017 Civil Minutes ("MSJ Tentative"), Docket No. 61. The parties submitted a joint notice of settlement on December 12, 2017. *See* Joint Notice of Settlement, Docket No. 64. The parties signed a settlement agreement in March 2018. *See* Docket No. 83-5.[2] Inexplicably, on March 1, 2018, Plaintiff filed a 52-page motion to reopen the case. *See* Docket No. 71. On April 12, 2018, the Court noted in a minute order that the case was at no time closed and that, after discussing the matter with the parties, noted that "Defendant Moors agrees to pay attorneys' fees as determined by the Court." *See* Apr. 12, 2018 Civil Minutes, Docket No. 81.

Now before the Court is Plaintiff's motion for attorneys' fees. *See* Plaintiff's Notice of and Motion for An Award of Attorney's Fees ("Motion"), Docket No. 83. After a missed opposition deadline, presumably related to the substitution of Defendants' attorney, Defendants filed their opposition to the Motion. *See* Defendants' Opposition to Plaintiff's Motion for Attorney's Fees ("Opp'n"), Docket No. 92. Plaintiff filed a "late" reply in support of the Motion, which the Court will consider. *See* Request for Leave to File Late Reply; Memorandum of Points and Authorities in Support of Motion for an Award of Attorney's Fees ("Reply"), Docket No. 95.

## II. Legal Standard

"The ADA authorizes a court to award attorneys' fees, litigation expenses, and costs to a prevailing party." *Moore v. Chase, Inc.*, No. 1:14-CV-01178-SKO, 2016 WL 3648949, at *1 (E.D. Cal. July 7, 2016) (quoting *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002)); *see also* 42 U.S.C. § 12205. Under the ADA, a prevailing party is one who "achieve[s] a material alteration of the legal relationship of the parties" that is "judicially sanctioned." *Jankey v. Poop Deck*, 537 F.3d 1122, 1129-30 (9th Cir. 2008) (internal quotation marks omitted). "[A]ny person found in violation of the California Unruh Act 'is liable for . . . any attorney's fees that may be determined by the court . . . .'" *See Rodgers v. Fitzgerald*, No. 14-CV-00985-DMR, 2016 WL 4658974, at *2 (N.D. Cal. Sept. 7, 2016) (quoting Cal. Civ. Code § 52(a)).

---

[1] The Court tentatively found in Plaintiff's favor as to his identified barriers to access with the exception of the slope as to the ramp's landing. *See* Docket No. 61 at page 9 of 9. The Court also indicated that it would wait to issue any injunctive relief until the parties had conducted further settlement negotiations. *Id.*

[2] The Court will further discuss the settlement in Section II below.

To establish an appropriate fee award, courts start by determining the "lodestar" figure by multiplying the reasonable hourly rate in the community at issue with the number of hours reasonably expended on the litigation. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990). After calculating the lodestar figure, courts can adjust the award using the *Kerr* factors. *Kerr v. Screen Extras Guild*, Inc., 526 F.2d 67, 70 (9th Cir. 1975) *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). Those factors include: (1) the time and labor required; (2) the novelty and difficult of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See id.* Courts "need not consider all twelve factors . . . only those called into question by the case at hand and necessary to support the reasonableness of the fee award." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002). Although in extraordinary circumstances the amount produced by the lodestar calculation may be increased, there is a strong presumption that the lodestar is sufficient. *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1176 (9th Cir. 2010) (citation and internal quotation marks omitted).

### III. Discussion

#### A. Awarding Fees and Costs

According to Plaintiff, the signed agreement between the parties obligates Defendants to pay fees and costs, with the Court to determine the amount. *See* Motion at 1-2. In response, Defendants argue that Plaintiff did not agree to pay for attorneys' fees in the settlement agreement, Plaintiff is not the prevailing party, and Plaintiff therefore does not deserve attorneys' fees. *See* Opp'n at 3.

In the settlement agreement signed in March 2018 (on separate but identical documents) by the parties, Section 2.5 provides that "**Defendants agree** to pay Plaintiff's **reasonable attorney fees and costs** as determined by the Court." *See* Motion Ex. 3 ("Settlement") ¶ 2.5, Docket No. 83-5 at CM/ECF pgs. 1, 7 (emphasis added). There is some confusion, however, because Paragraph 4 of the Settlement separately provides:

> The amount of attorney fees and litigation costs/expenses Plaintiff's counsel is entitled to shall be determined by the Court via a Noticed Motion. ***Defendants do not agree that Plaintiff is entitled to attorney fees and litigation expenses/costs but do agree that Plaintiff is entitled to the pursuit of them as the Court determines***, Defendants retain all arguments related to the reasonableness of the Plaintiff's requested fee award.

*See id.* ¶ 4 (emphasis added). Resolving this issue is an excerpt from the April 12, 2018 hearing transcript, which postdates the Settlement and removes doubt that Defendants agreed to pay for attorneys' fees and costs, with the amount to be determined by the Court:

> THE COURT: Well, no. What you are agreeing to is this: At this point in time, the court will determine the amount of attorney's fees.
>
> MR. MOORS: Yes.
>
> \*\*\*
>
> THE COURT: Well, again, are you going to be willing to pay the attorney's fees as determined by the court?
> MR. MOORS: With fingers crossed, yes your Honor.
> THE COURT: All right. Well, as long as when you say fingers crossed, you mean fingers crossed for luck not fingers crossed that I am going to say yes but I mean no, that sort of thing.
> MR. BALLISTER: You can guess which one, your Honor. It is up to you. I have been guessing since –
> THE COURT: That is pejorative. That is what I am talking about, counsel.
> MR. MOORS: Your Honor, we are totally at your mercy on this.
> THE COURT: All right. In that case, the answer is, yes, you will pay attorney's fees as determined by the court.
> MR. MOORS: Yes, your Honor.
> THE COURT: All right. Then I guess we have what we have.

*See* Apr. 12, 2018 Hr. Tr. at 8:2-8:5, 9:11-10:5, Docket No. 93. Based on a reasonable interpretation of Defendants' clarification at the April 12, 2018 hearing, the Court would conclude that Defendants agreed on the record to pay attorneys' fees and costs, with the Court determining the amount of fees and costs.[3] The Court will calculate that amount below.

---

[3] On April 12, 2018, the Court noted in a minute order that the case was at no time closed and that "Defendant Moors agrees to pay attorneys' fees as determined by the Court." *See* Apr. 12, 2018 Civil Minutes, Docket No. 81.

4

### B. Reasonable Hourly Rates

As described above, the Court begins its analysis by calculating the lodestar. *See generally Vogel v. Harbor Plaza Ctr.*, LLC, 893 F.3d 1152, 1158 (9th Cir. 2018). To do so, the Court must determine reasonable hourly rates and then multiply those rates by the number of hours reasonably expended on the litigation. Plaintiff argues that his attorneys' proffered hourly rates (ranging from $425 to $250) are reasonable. *See* Motion at 3-9. In doing so, Plaintiff primarily cites to the experience of his attorneys. *See id.* at 3-8. Plaintiff also argues that Plaintiffs' counsel should receive the proffered rates because other judges in this district have awarded these rates. *See id.* at 8 (citing Motion Exs. 4-7). In the Opposition, Defendants do not oppose the specific rates Plaintiff requests for his attorneys. *See generally* Opp'n.

In Exhibit 2 to the Motion, Plaintiffs request a $425 hourly rate for Mark Potter (20 years experience), Russell Handy (17 years experience), and Raymond G. Ballister, Jr. (29 years experience); a $350 hourly rate for Phyl Grace (22 years experience); a $300 hourly rate for Dennis Price (7 years experience), Chris Carson (7 years experience), and Isabel Masanque (6 years experience); and a $250 rate for Sara Gunderson (5 years experience) and Elliott Montgomery (7 years experience). *See generally* Motion Ex. 2 (billing statement), Docket No. 83-4; Declaration of Mark Potter in Support of Plaintiff's Motion ("Potter Decl.") ¶¶ 8-16, Docket No. 83-3.

This Court has recently cited with approval the Real Rate Report as a benchmark for reasonable hourly rates. *See, e.g.*, *Housing Works v. County of Los Angeles*, Case No. 2:15-cv-08982-GW-(RAOx), Docket No. 155, at 7 (C.D. Cal. July 12, 2018); *Nisbet v. Am. Nat'l Red Cross, et al.*, Case No. 2:16-cv-7342-GW-(ASx), Docket No. 136, at 14, n.12 (C.D. Cal. June 7,

---

Even if the Court did not find that Defendants agreed on the record to pay reasonable attorney's fees and costs as determined by the Court, Plaintiff is still a "prevailing party" under applicable law. According to federal law, a plaintiff is a "prevailing party" for purposes of attorney fee-shifting statutes, such as Section 505 of the ADA, if the party effects "a material alteration of the legal relationship between the parties [whereby] the plaintiff becomes entitled to enforce a judgment, consent decree, ***or settlement against the defendant***." *Farrar v. Hobby*, 506 U.S. 103, 113 (1992) (emphasis added). Under the Settlement, it was provided that "Defendants shall pay the total sum of Four Thousand Dollars ($4,000) to Plaintiff and counsel as damages to Plaintiff in the form of a check made payable to "Center for Disability Access[.]" *See* Settlement ¶ 4. Also, in the MSJ Tentative, the Court held that it "would find that Defendants violated the Unruh Civil Rights Act with respect to several barriers to access, including those in the restroom and the handrails on the Ramp. As such, the Court would award Plaintiff $4,000 as well as reasonable attorney's fees and costs subject to proof." "[A]ny person found in violation of the California Unruh Act 'is liable for . . . any attorney's fees that may be determined by the court . . . .'" *See Rodgers v. Fitzgerald*, No. 14-CV-00985-DMR, 2016 WL 4658974, at *2 (N.D. Cal. Sept. 7, 2016) (quoting Cal. Civ. Code § 52(a)). As such, Defendants are obligated to pay reasonable attorneys' fees of Plaintiff as he is the prevailing party herein. This is an independent basis for awarding fees to Plaintiff, with the amount to be determined by the Court.

2018); *Harrison v. Archdiocese of Los Angeles, et al.*, Case No. 2:13-cv-8257-GW-(SSx), Docket No. 115, at 9-10 (C.D. Cal. May 7, 2015). The Court finds that the Real Rate Report provides objective empirical data that serves as a better benchmark of reasonableness than scouring a litany of cases from within and outside the judicial district.[4] *See* Wolters Kluwer/CEB, *2017 Real Rate Report: Lawyer Rates, Trends and Analysis* ("Real Rate Report"). Because Plaintiff's counsel does not seem to call themselves partners or associates but instead lists the years of experience of each attorney, the Court would use ten years of experience as a demarcation point.[5] *See generally* Potter Decl. In other words, all attorneys with more than 10 years of experience will be treated as "partners" and all those with less than 10 years of experience will be treated as "associates."

Additionally, it is recognized that rates of attorneys' fees as to subject areas also vary depending on the complexity of law and/or factual underpinnings. The Court would find that the litigation of ADA barriers cases is not intricate or complicated. Once one deals with the subject area, one quickly discovers its "cookie-cutter" nature. *See e.g. Loskot v. Annie's Panda Garden*, No. 2:13-CV-00213-JAM-JEM, 2015 WL 2235521, at *2 (E.D. Cal. May 12, 2015) (characterizing an attorney's ADA practice in this field as dealing in "simple" cases which had been "reduced . . . to a kind of routine.").[6] Because this specific case lacks any serious complexities,[7] the Court would use the first quartile rates listed in the Real Rate Report,

---

[4] Other judicial officers within the Central District have cited with approval and utilized the Real Rate Report in calculating the appropriate award of attorney's fees. *See e.g. Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, Case No. CV09-5457-PSG-(JCx), 2015 WL 12645755, at *14, 17 n. 5 (C.D. Cal. Nov. 11, 2015).

[5] Unlike the other attorneys, Mark Potter seems to go by "managing partner." Potter Decl. ¶ 2.

[6] For example, establishing whether there is an unlawful ADA architectural barrier is simple. "To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ('ADAAG')." *Rush v. Denco Enterprises, Inc.*, 857 F.Supp.2d 969, 973 (C.D.Cal.2012) (citations omitted), *rev'd and remanded on other grounds*, 593 F. App'x 727 (9th Cir. 2015). The ADAAG "lay[s] out the technical structural requirements of places of public accommodation," *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080-81 (9th Cir. 2004), and provides "the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations," *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). Because the ADAAG "establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA." *Id.* at 947. In essence, this is the opposite of rocket science.

[7] This case involved issues with the ramp from the Restaurant's parking area to the entrance (*i.e.* whether it was level and contained proper handrails), and issues with the Restaurant's restroom (*i.e.* there was only one grab bar instead of two near the toilet). *See* FAC ¶¶ 12-17. These are by no means complex issues and thus the Real Rate Report's first quartile data for litigation partners/associates would stand as the reasonable rates in the community for

narrowing the rates down to Los Angeles, California, where this Court sits.[8] The first quartile rate for litigation partners in Los Angeles is $346.30 per hour, and the first quartile rate for litigation associates is $257.92 per hour.[9] *See* Real Rate Report at 26. The Court will thus cut the rates for Plaintiff's attorneys to the following adjusted rates:

| Attorney Name | Years of Experience | Adjusted Rate |
|---|---|---|
| Mark Potter | 20 | $346.30 |
| Russell Handy | 17 | $346.30 |
| Raymond G. Ballister, Jr. | 29 | $346.30 |
| Phyl Grace | 22 | $346.30 |
| Dennis Price | 7 | $257.92 |
| Chris Carson | 7 | $257.92 |
| Isabel Masanque | 6 | $257.92 |
| Sara Gunderson | 5 | $257.92 |
| Elliott Montgomery | 7 | $257.92 |

**C. Number of Hours**

Plaintiff requests an award for 107 hours of work. *See* Motion Ex. 2 at 1. Defendants, in their short Opposition, take issue with the number of hours requested for the work of Plaintiff's counsel. Defendants (albeit briefly) argue that the "over 100 hours churning out [duplicative] and boilerplate" work merits a reduction. *See* Opp'n at 4. They argue that amount is excessive for the "routine" work that "should have been handled by paralegals . . . ." *See id.* at 5. The Court will address these issues.

*1. Excessive, Redundant, or Otherwise Unnecessary Billing*

"A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.' " *See Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*,

---

this work. There are ADA cases where the Court would apply the median or even third quartile rates, but this is not one of them.

[8] "The relevant community is the district in which the adjudicating court sits." *Vogel v. Dolanotto, LLC*, No. 2:16-CV-02488-ODW-(KSx), 2018 WL 1684303, at *2 (C.D. Cal. Apr. 5, 2018) (citation and internal quotation marks omitted).

[9] The rates adopted herein are consistent with those recently adopted by other judges in the Central District. *See e.g. Vogel*, 2018 WL 1684303, * 3 (reducing attorneys' fees for partners to $300 per hour and associates to $200 per hour).

461 U.S. 424, 434 (1983)). The Court will address each attorney's hours for excessive, redundant, or otherwise unnecessary billing.

        a. Mark Potter

As to Mark Potter ("Potter"), the Court would reduce his hours for certain billing entries. On June 23, 2016 and on February 2, 2017 Potter spent a total of 3.2 hours conducting public records searches to determine the identity of responsible parties.[10] Because that task could be done by a non-attorney and because 3.2 hours is excessive, the Court would reduce that figure to **one hour**. The Court notices that on June 30, 2016 Potter took 1.7 hours to review "investigator Louis' report and +220 photos; phone conversation with him regarding the same; notes to file," though he billed nearly the same number of hours (1.2 hours) for reviewing and discussing roughly 1/3 the number of photos on September 9, 2016. The Court would reduce the amount for both by **.9 hours**. On March 24, 2017 and April 4, 2017 Potter executed the same task twice, reviewing and analyzing the Answer for .5 hours on March 24, 2017 and for .4 hours again on April 4, 2017. The Court would therefore take out the billing of **.4 hours** for that task on April 4, 2017. As to Potter's estimate that he would bill 8 hours for "[t]ime to review opposition brief, draft the reply, attend oral argument," the Court would reduce the time to 4 **hours** because the reply was only 5.5 pages, the Opposition brief to be reviewed was only 4.5 pages, and the hearing for this motion will be brief.

Though the billing increment of .1 is proper, the Court notices many tasks billed for .1 or .2 hours that would take mere seconds for Potter to do (*e.g.* "instructed assistant to contact defense re mediator selection" billed for .2 hour on March 1, 2017). The Court would therefore reduce the following billing entries, though small, because they inherently would have taken far shorter than 6 to 12 minutes to perform: "instructed assistant to contact defense re mediator selection" for .2 hours on March 1, 2017, "instructed assistant to follow up with defendant re mediator selection and to contact Defendants' proposed mediator for availability and consent to mediate case" for .2 hours on March 13, 2017, "instructed assistant to send default warning letter to def. Joey's" for .2 hours on March 16, 2017, "instructed assistant to contact mediator re scheduling mediation" for .2 hours on May 11, 2017, "instructed staff to send reminder to client re mediation" for .1 hours on June 23, 2017, "[i]nstructed assistant to send default warning letter

---

[10] It is more accurate for the Court to cite the billing entries in Motion Exhibit 2 based on dates and attorney rather than page numbers. The Court therefore cites by date and attorney in its analysis.

to defendant Joseph Moors" for .2 hours on September 1, 2017, "instructed assistant to contact investigator Evens Louis re attendance for Trial" for .1 hours on September 8, 2017, and "[i]nstructed assistant to email Court reporter re transcript of the court hearing" for .1 hours on October 23, 2017.  The Court would reduce hours expended on these tasks by **.6 hours**. Similarly, the Court notes that a number of other entries were billed for .2 hours per entry for reviewing particularly short and simple orders.  Those entries were as follows: "reviewed clerk's entry of default of def. Joey's" for .2 hours on March 22, 2017, "reviewed notice of assignment of mediator" for .2 hours on April 6, 2017, "reviewed order setting post mediation status conference" for .2 hours on April 17, 2017, and "reviewed order continuing status conference and deadline to conduct mediation" for .2 hours on June 4, 2017.  The Court would reduce those hours by **.4 hours**.  Adding up the aforementioned bolded reductions, the Court would reduce Potter's hours by **8.5 hours in total**.

### b. Russell Handy

As to Russell Handy ("Handy"), the Court only considers one entry excessive: "instructed assistant to send a default warning letter to defense counsel for Defendant Luria Moors Foreman" for .2 hours on August 2, 2017.  The Court will reduce that task by **.1 hours** and thereby reduce Handy's hours by **.1 hours in total**.

### c. Raymond G. Ballister, Jr.

As to Raymond G. Ballister, Jr. ("Ballister"), the Court would reduce certain entries for their excessiveness and imprecision in billing.  With the entry for "travel to and appearance at mediation conference" billed for 6 hours on June 28, 2017, the Court would reduce that entry by **2 hours** for its imprecision and inherent excessiveness.  On four separate occasions,[11] Ballister billed separate entries that he "[p]repared for and in person attended Status conference," with small iterations such as "notes to file" in a few of those entries.  Those entries, essentially for attending status conferences, amount to 9.7 hours in total.  Considering that the Court allows parties to attend status conferences by telephone upon advanced notice, that such appearances are remarkably brief, and that preparation for status conferences are minimal, these billings are excessive and the Court would reduce the total expended on them by **4.2 hours.**  Adding up the aforementioned bolded reductions, the Court would reduce Ballister's hours by **6.2 hours in total**.

---

[11] Those entries were billed on December 7, 2017, December 18, 2017, March 29, 2018, and April 12, 2018.

d. Phyl Grace

On many occasions Phyl Grace ("Grace") "instructed" support staff to conduct ministerial tasks, and those "instructions" would have taken no more than mere seconds or a couple of minutes because Grace did not actually conduct those tasks. As discussed with Potter above, though .1 increments are standard in billing, the sheer volume of entries for these types of tasks is large and so even .1 increments are excessive. The Court counts roughly 2.9 hours of Grace's that fall under this category of billings for .1 or .2 hour entries, and the Court would thus reduce those hours by **1.4 hours**, reducing Grace's hours by **1.4 hours in total**.

e. Dennis Price

As to Dennis Price ("Price"), the Court would reduce his hours by **.1 hour** for taking .2 hours to instruct support staff to do a simple task on February 24, 2017 (instructing assistant to "contact court clerk re request to appear telephonically for status conference and to file NOA"). On April 17, 2017, Price billed 3 hours for "prepared for, travelled to, and appeared at status conference via telephone; notes to file." The Court is confused how Price would bill to travel to a status conference that he appeared at "via telephone." Considering the imprecision in what it means to "prepare," and the fact Price appeared *via telephone* at a short status conference, the Court would reduce Price's hours by **2 hours** to match the February 27, 2017 entry wherein he billed 1 hour for that same task. Also, as discussed above, status conferences are brief and do not require substantial preparation. Adding up the aforementioned bolded reductions, the Court would reduce Price's hours by **2.1 hours in total**.

f. Chris Carson

The Court would refrain from reducing Chris Carson's hours.

g. Isabel Masanque

As to Isabel Masanque ("Masanque"), the Court would reduce her hours by **.6 hours** for taking approximately 1.2 hours to instruct support staff to do simple tasks, with those instructions taking far less than the .1 hour increments would indicate. The Court would thus reduce Masanque's hours by **.6 hours in total**.

h. Sara Gunderson

As to Sara Gunderson ("Gunderson"), the Court would reduce her hours by **.2 hours** for taking approximately .4 hours to instruct support staff to do simple tasks, with those instructions taking far less than the .1 hour increments would indicate. The Court would thus reduce

Gunderson's hours by **.2 hours in total**.

      i. Elliott Montgomery

The Court would refrain from reducing Elliott Montgomery's hours.

In sum, based on these specific line item reductions for excessive billing, Plaintiff's counsel would earn the following award:

| Attorney Name | Years of Experience | (Adjusted) Rate | (Reduced) Hours | Total Fees Per Attorney |
|---|---|---|---|---|
| Mark Potter | 20 | $346.30 | 18.8 | $6,510.44 |
| Russell Handy | 17 | $346.30 | 1.9 | $657.97 |
| Raymond G. Ballister, Jr. | 29 | $346.30 | 18.4 | $6,371.92 |
| Phyl Grace | 22 | $346.30 | 19.6 | $6,787.48 |
| Dennis Price | 7 | $257.92 | 4.4 | $1,134.85 |
| Chris Carson | 7 | $257.92 | 1.6 | $412.67 |
| Isabel Masanque | 6 | $257.92 | 15.7 | $4,049.34 |
| Sara Gunderson | 5 | $257.92 | 5.2 | $1,341.18 |
| Elliott Montgomery | 7 | $257.92 | 2.3 | $593.22 |
| **TOTAL** | | | **87.9** | **$27,859.07** |

    *2. Number of Attorneys and Block-Billing*

There are cases which raise difficult issues of fact and/or law which require the participation of multiple attorneys on one side and/or the other. *See Davis v. City of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992). However, Plaintiffs have submitted no credible explanation as to why this lawsuit required 9 different attorneys to work on this case. Courts in this district have reduced hours awarded when multiple attorneys work on the same tasks as one another. *See e.g. Bobrick Washroom Equip., Inc. v. Am. Specialties, Inc.*, No. CV 10-6938-SVW-(PLAx), 2013 WL 12129368, at *8 (C.D. Cal. Feb. 20, 2013) (internal quotation marks omitted) (holding that based on the "imprecision" in attorney's descriptions of billed hours, the Court could not discern the extent that the work of *multiple* attorneys was justified). Indeed, the simple factor of having an excessive number of attorneys without an adequate explanation as to need or necessity has resulted in a reduction of claimed time. *See e.g. St. Louis Effort for AIDS v. Lindley-Myers*, No. 13-4246-CV-C-ODS, 2018 U.S. Dist. LEXIS 51682, *13-14 (W.D. Mo. Mar. 28, 2018); *Alexander v. City of Jackson*, No. 3:04CV614 HTW-LRA, 2011 U.S. Dist.

11

LEXIS 35091, *25-26 ("on this matter of hours expended, and the issue of reasonableness, defendants cite, quite rightly, the unmistakably excessive number of attorneys involved in prosecuting plaintiffs' claims, then seeking attorney fees, Plaintiffs would have the court give holiday presents to ten (10) separate attorneys and four (4) paralegals."). As described in footnote seven of this tentative, this case was not particularly complex, either factually or in terms of the subject matter or applicable law. The Court would hold that having nine different attorneys (three of whom are treated as being of partner level) occasionally billing for similar or related tasks as one another without adequate explanation for why that should be the case. Moreover, the sheer number of attorneys in this case was excessive, reducing their efficiency (*i.e.* needlessly repeating a factual and legal learning curve) and (even though perhaps unintended) inflating their hours.

There were also numerous instances where Plaintiff's counsel engaged in block billing, which makes it difficult for the Court to determine the reasonableness of time spent on certain tasks. For example, in Potter's June 7, 2016 entry for 1.4 hours, he billed for the following: "Drove to and walked the site to conduct an assessment of the allegations; instructions to investigator about photos and measurements I want." Courts often frown upon block-billing and make reductions for such behavior. *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1222-23 (9th Cir. 2010) (upholding 30% reduction of block-billed hours); *Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1030 (C.D. Cal. 2012) (noting it is not rare to impose a 5% to 20% reduction for block-billed hours).

Taking these problematic elements into consideration, in its discretion the Court would deduct an additional across-the-board reduction of 25% off the total amount of attorneys' fees in this case.[12] Therefore, the total amount of attorneys' fees which the Court would award is ($27,859.07 x .75 =) $20,894.30.

The Court refrains from applying the *Kerr* factors (which Plaintiff refers to as the *Hensley* factors) to reduce or increase the lodestar further. *See generally* Motion; Opp'n; Reply. There has been no showing that this is an extraordinary case, and the lodestar therefore stands. *See Ramirez v. Merced Cty.*, No. 1:11-CV- 531 AWI-(DLBx), 2013 WL 4780440, at *8 (E.D. Cal. Sept. 5, 2013) (holding that "[t]here is a 'strong presumption' that the lodestar amount is

---

[12] The Court would not add the 2.5 hours requested in the Reply for opposing and conferring about Defendants' ex parte application to continue the hearing date on this Motion. *See* Reply at 6.

reasonable and sufficient, and only 'in extraordinary circumstances' should the lodestar amount be altered). Defendants do not seek a modification using the *Kerr* factors, and though Plaintiff addresses those factors in the Motion, they specifically concede they seek "no modification of the lodestar." *See* Motion at 11-15; *see generally* Opp'n.

### D. Costs

On top of attorneys' fees, the ADA authorizes a court to award litigation expenses and costs to a prevailing party, including expert witness fees. *See Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002). As discussed in Section III.A, the Settlement also provides Plaintiff costs as determined by the Court. In the Motion, Plaintiff seeks $2,988.69 in costs (and an additional $48.18 in costs in the Reply). *See* Motion at 16; Motion Ex. 2; Reply at 6. Those costs break down as $400 for an investigator to investigate the case, $400 for filing fees, $20 for a service cost, $2,120.51 in expert fees to verify that the property had been remediated, and $48 for a hearing transcript. *See id.* Defendant argues that the costs "are extremely nebulous," *see* Opp'n at 5, and more specifically that $2,120.51 for expert fees was excessive because the site inspection should have taken "two minutes," *see id.* at 3. The Court disagrees that inspecting the Restaurant and drafting the report should have taken "two minutes," but 9.4 hours is very excessive. *See* Motion Ex. 8 (invoice from architectural expert Paul L. Bishop). As such, the Court would reduce the expert fees to $1,100. The Court would award the additional $48.18 sought for an additional hearing transcript sought in the Reply. In total, the Court would therefore award $1,968.18 in costs.

### IV. Conclusion

The Court would **GRANT IN PART** the Motion. The Court would **AWARD** $20,894.30 in fees and $1,968.18 in costs to Plaintiff. Plaintiff should prepare a proposed order to this effect within 7 days of this order, and if any party has a *mathematical* issue with the hours as tallied they should similarly inform the Court in writing within 3 days of this order.